OPINION OF THE COURT
Elliot Golden, J.
In an era when equal rights for homosexuals are being urged, the defendants, admitted homosexuals, urge instead that they should not be treated in the same manner as heterosexuals similarly situated.
The defendants, each awaiting sentence on their plea of guilty to grand larceny in the second degree, claim that they *649 should be exempted from a sentence of incarceration because of their sexual orientation and physical appearance. They contend that their incarceration would subject them to probable physical and sexual abuse, thereby transgressing their Federal constitutional right to be free from the infliction of cruel and unusual punishment. '
Defendant Fellman, who was employed by the New York City Department of Social Services, had issued a series of checks to Basta for home services that were never performed. Between November, 1976 and December, 1977, the two of them appropriated and shared approximately $18,000 in this manner, with Basta cashing the checks which Fellman had authorized. The defendants waived indictment pursuant to CPL article 195 and pleaded guilty to a superior court information.
It should be noted at the outset that the defendants do not contend that incarceration is, in and of itself, cruel and unusual punishment. They contend, rather, that they are members of a class which is particularly at risk within the prison population and that they should, therefore, be given more favorable treatment than the ordinary convicted defendant. The People contend, and the court agrees, that there is no basis in support of the defendants’ argument.
The only reported New York case called to the court’s attention which deals with the rights of homosexuals vis-á-vis the prison system is People ex rel. Price v Warden (48 AD2d 275). There, the Appellate Division held that the warden at the Rikers Island Correctional Facility was within his discretion in placing two apparent homosexuals in administrative confinement when they refused to leave the heterosexual "dorm” and move to an area where their conduct would be less offensive to their fellow inmates.
 No cases have been called to the court’s attention which support defendants’ contention that homosexuals have a right to be exempt from confinement. The New York law appears to be quite otherwise — homosexual convicts may in effect choose between confinement with other homosexuals or with heterosexuals as long as their choice does not become sufficiently disruptive of prison routine to cause prison officials to segregate them. There are in fact regulations applicable to city and State prisons that allow for segregation of homosexuals as well as other potential victims of sexual assault or other abuse. Such provisions do not deny to those segregated any *650 privileges enjoyed by the general inmate population at large.[1] But by no means may they choose to avoid confinement altogether.
Some of the cases cited by the defense do take cognizance of the incidence of homosexual rape in prison, and in two, People v Harmon (53 Mich App 482) and People v Unger (33 Ill App 3d 770), the majority did observe that homosexual rapists may be more likely to take advantage of younger, more effeminate, or more defenseless-looking inmates. Nevertheless, in neither case was the defendant excused from confinement. The only questions in those cases, as in State v Green (470 SW2d 565 [Mo]) and Lewis v State (318 So 2d 529 [Fla]), was whether the escaped prisoner could plead, in defense to a subsequent prosecution for the escape, that he had been raped and then threatened (Lewis), threatened with death (Unger, Green) or severely beaten (Harmon). In all four cases the original prison sentence was allowed to stand; in Green, the court held that the defendant could not, in the subsequent proceedings, plead that the rapes and threats justified his escape on the grounds of either coercion or necessity.
In Holt v Sarver (309 F Supp 362, affd 442 F2d 304), relied upon by the defendants, the Federal court had in fact found an Eighth Amendment violation by the Arkansas penal system based upon evidence that prisoners were tortured by guards, required to perform jobs so onerous that some preferred solitary confinement, were murdered, often blackmailed by prisoner-guards, and in general severely mistreated. While homosexual rape was a factor, it was by no means the only one, in the court’s decision.
An analogy may be found in People v Browarnick (42 AD2d 953) where the Appellate Division, in ordering a sentenced defendant to surrender into custody despite his allegations that he had serious heart disease, said: "It is patent that unless incarceration would probably cause defendant’s death he should be made to serve the sentence.” No such showing has been made here.
In Meredith v Director (226 Md 653, 657) the court stated, in denying a defendant’s appeal of a sentence of incarceration based upon a claim of cruel and unusual punishment where a *651 fellow inmate attempted to take the. defendant’s life, that "There is nothing to indicate that the asserted danger of future attack by the applicant’s cruel fellow inmate is any part of his punishment, nor is there anything to indicate that this condition, if it exists, cannot be corrected in the future.” Such holding has equal application in the case at bar.
People v Dolkart (60 AD2d 238), cited by the defense, is not applicable. In that case, the issue before the Appellate Division was the extent to which a promise made to the defendant by the prosecutor should have been given consideration by the trial court. No such promise has been made here; indeed, defendants have been informed, through their lawyer, that a recommendation in favor of incarceration might well be made.
In short, there is no support in the law for defendants’ contentions that an increased possibility of homosexual rape in prison constitutionally prohibits incarceration. Even granting that the defendants here may be at a relative disadvantage because of their size, inexperience, youth, or sexual preference, none of these factors entitle them to such special consideration from the court. Many prisoners are younger or in worse physical condition. Many may be homosexuals. To endorse the defendants’ contention would be tantamount to a grant of amnesty from imprisonment to all others similarly situated, whether homosexual or not, and regardless of whether a sentence of imprisonment was otherwise proper. Such factors are not, and should not be, a bar to incarceration if the court feels that a prison sentence is indicated on the merits.[2]

. See City of New York Department of Correction rules 7.30-020 through 7.30-040 and 7 NYCRR 300.2 (b), 300.3 (a), (b) (3); 304.1 (b), 304.2 (b), 304.3.

. The defendant Fellman was sentenced to 60 days’ imprisonment plus probation for the remainder of five years, and the defendant Basta was sentenced to probation for five years, for the reasons more specifically set forth on the record at the time of sentencing. A requirement calling for restitution was added to the conditions of probation for each defendant.